# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| **GREGORY LANGLEY, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:23-cv-02300** |
| | § | |
| **NETJETS AVIATION, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT NETJETS AVIATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3922
Email: dmunro@jonesday.com

Enrique A. Lemus
TX Bar No. 24092684
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Telephone: (214) 969-4877
Email: elemus@jonesday.com

*Counsel for Defendant*
*NetJets Aviation, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................- 1 -

STATEMENT OF FACTS ..................................................................................- 3 -

I.      THE PARTIES AND COLLECTIVE BARGAINING AGREEMENT ......................- 3 -

II.     NETJETS' ELECTION OF MANDATORY RETIREMENT RULE ........................- 3 -

III.    NJASAP'S GRIEVANCE ..............................................................................- 4 -

IV.     PLAINTIFFS' ALLEGATIONS ......................................................................- 4 -

V.      PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ...............................- 5 -

ARGUMENT ......................................................................................................- 6 -

I.      THE COURT SHOULD DISMISS FOR LACK OF PERSONAL
        JURISDICTION. ..........................................................................................- 6 -

        A.      There Is No General Jurisdiction. ....................................................- 7 -

        B.      There Is No Specific Jurisdiction......................................................- 8 -

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ADEA. ............................- 9 -

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE NETJETS-
        NJASAP COLLECTIVE BARGAINING AGREEMENT. ......................................- 11 -

IV.     PLAINTIFFS' "UNFAIR LABOR PRACTICE" CLAIM LACKS LEGAL
        MERIT. ....................................................................................................- 13 -

V.      THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR
        DECLARATORY AND INJUNCTIVE RELIEF. ......................................................- 14 -

VI.     THE COURT SHOULD DISMISS THIS ACTION BECAUSE THIS IS THE
        IMPROPER VENUE TO ADJUDICATE THE ACTION. .........................................- 16 -

CONCLUSION..................................................................................................- 17 -

CERTIFICATE OF SERVICE ..............................................................................- 18 -

## TABLE OF AUTHORITIES

Page

CASES

*A.M. v. Salesforce.com, Inc.*,
2022 WL 2181068 (N.D. Tex. June 16, 2022) ..........................................................9

*Agher v. Envoy Air Inc.*,
2018 WL 6444888 (C.D. Cal. Oct. 12, 2018)............................................................7

*Akula v. Phillips*,
2022 WL 17903707 (E.D. La. Dec. 23, 2022)..........................................................13

*Anderson v. Am. Airlines, Inc.*,
2 F.3d 590 (5th Cir. 1993) .......................................................................................11

*Andrews v. Louisville & Nashville R.R.*,
406 U.S. 320 (1972)..................................................................................................11

*Aries Int'l, LLC v. Isramco Negev 2 Ltd. P'ship*,
2014 WL 4924002 (S.D. Tex. Sept. 30, 2014) ..........................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................15

*Avera v. Airline Pilots Ass'n Int'l*,
436 F. App'x 969 (11th Cir. 2011) ..........................................................................10

*Aviles v. Kunkle*,
978 F.2d 201 (5th Cir. 1992) .....................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................13

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*,
373 U.S. 33 (1963)....................................................................................................11

*Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co.*,
894 F.2d 1463 (5th Cir. 1990) .................................................................................14

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)....................................................................................................7

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*,
    582 U.S. 255 (2017)................................................................................6

*Brown v. Am. Airlines*,
    593 F.2d 652 (5th Cir. 1979) ..............................................................11

*Brown v. WalMart #6467*,
    2020 WL 6787150 (E.D. Tex. Oct. 23, 2020), *report and recommendation
    adopted*, 2020 WL 6781520 (E.D. Tex. Nov. 17, 2020) ........................10

*Casas v. Northrop Grumman Ship Sys., Inc.*,
    533 F. Supp. 2d 707 (S.D. Tex. 2008) ...................................................8

*Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
    915 F.2d 167 (5th Cir. 1990) ..............................................................14

*Companion Prop. & Cas. Ins. Co. v. Palermo*,
    2012 WL 12882078 (N.D. Tex. Nov. 19, 2012), *aff'd*, 723 F.3d 557 (5th Cir.
    2013) ...................................................................................................9

*Consolidated Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299 (1989)...................11

*Crase v. Astroworld, Inc.*,
    941 F.2d 265 (5th Cir. 1991) ..............................................................16

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................6

*Davis v. Am. Mortg. Network, Inc.*,
    2012 WL 13018977 (N.D. Tex. Jan. 18, 2012) .....................................15

*Davis v. Fort Bend Cnty.*,
    893 F.3d 300 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty. v. Davis*, 139 S.
    Ct. 1843 (2019) ...................................................................................10

*Fiduciary Network, LLC v. Buehler*,
    2015 WL 2165953 (N.D. Tex. May 8, 2015) ..........................................7

*Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts., LLC*,
    466 F. Supp. 3d 692 (S.D. Tex. 2020) ...................................................8

*Grimes v. CSX Transp., Inc.*,
    338 F. App'x 522 (7th Cir. 2009) ........................................................12

*Hardin v. United Airlines, Inc.*,
   2021 WL 3771768 (S.D. Tex. July 15, 2021) ........................................................7

*Hawaiian Airlines, Inc. v. Norris*,
   512 U.S. 246 (1994) ............................................................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ..............................................................................................8

*Kinney v. Int'l Bus. Machs. Corp.*,
   2021 WL 11670020 (W.D. Tex. June 7, 2021), *amended on reconsideration*,
   2021 WL 11670024 (W.D. Tex. July 7, 2021) ......................................................6

*Koshar v. TIGI Linea Corp.*,
   2022 WL 848052 (E.D. Tex. Feb. 4, 2022), *report and recommendation*
   *adopted*, 2022 WL 839945 (E.D. Tex. Mar. 21, 2022) ........................................10

*Libersat v. Sundance Energy, Inc.*,
   978 F.3d 315 (5th Cir. 2020) ........................................................................6, 8, 9

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*,
   723 F.2d 1173 (5th Cir. 1984) ............................................................................14

*Martinez v. Tyson Foods, Inc.*,
   2021 WL 1289898 (N.D. Tex. Apr. 7, 2021) ........................................................6

*McClintock v. Sch. Bd. E. Feliciana Par.*,
   299 F. App'x 363 (5th Cir. 2008) ..................................................................16, 17

*Mitchell v. Continental Airlines, Inc.*,
   481 F.3d 225 (5th Cir. 2007) ..........................................................................12, 13

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ................................................................................7

*Morris v. Hedricks*,
   2022 WL 4551588 (E.D. La. Sept. 29, 2022) ................................................16, 17

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
   688 F.3d 214 (5th Cir. 2012) ................................................................................9

*Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*,
   795 F.2d 415 (5th Cir. 1986), *aff'd sub nom. Omni Cap. Int'l, Ltd. v. Rudolf*
   *Wolff & Co.*, 484 U.S. 97 (1987) ..........................................................................6

*Poly-Am., L.P. v. API Indus., Inc.*,
 2021 WL 8441917 (E.D. Tex. Sept. 30, 2021) ..........................................................7

*Pyles v. United Air Lines, Inc.*,
 79 F.3d 1046 (11th Cir. 1996) ..................................................................................12

*Rawls v. Old Republic Gen. Ins. Grp., Inc.*,
 489 F. Supp. 3d 646 (S.D. Tex. 2020) ........................................................................8

*Slocum v. Del., Lackawanna & W. R.R. Co*.,
 339 U.S. 239 (1950)..................................................................................................11

*Stith v. Perot Sys. Corp*.,
 122 F. App'x 115 (5th Cir. 2005) ..............................................................................10

*Stuart v. Spademan*,
 772 F.2d 1185 (5th Cir. 1985) ....................................................................................6

*Thornton v. AAA Colo., Inc*.,
 2023 WL 5058839 (N.D. Tex. Aug. 8, 2023)..............................................................9

*Townsend v. Pep Boys, Manny Moe & Jack*,
 2014 WL 4826681 (N.D.N.Y. Sept. 29, 2014) ...................................................16, 17

*Verde Minerals, LLC v. Koerner*,
 2019 WL 1429789 (S.D. Tex. March 29, 2019) ........................................................14

*Victor Elias Photography, LLC v. Leonardo Worldwide Corp*.,
 2019 WL 3713724 (S.D. Tex. Jan. 25, 2019) ..............................................................7

*Wenche Siemer v. Learjet Acquisition Corp*.,
 966 F.2d 179 (5th Cir. 1992) ......................................................................................7

*Wildy v. Wells Fargo Bank, N.A.*,
 2013 WL 246860 (N.D. Tex. Jan 21, 2013) ..............................................................14

**STATUTES**

28 U.S.C. § 1391................................................................................................16, 17

29 U.S.C. § 158........................................................................................................13

29 U.S.C. § 623..........................................................................................................9

29 U.S.C. § 626 ........................................................................................................10

45 U.S.C. § 152 ........................................................................................................13

45 U.S.C. § 153 ....................................................................................................2, 11

45 U.S.C. § 184 ....................................................................................................2, 11

49 U.S.C. § 44729 .........................................................................................1, 2, 3, 10

Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ........................ passim

Declaratory Judgments Act, 28 U.S.C. § 2201 ........................................................14

Pub. L. 117–328, div. Q, § 107(a), (b), Dec. 29, 2022, 136 Stat. 5257, 5258 ........................1, 2, 9

Railway Labor Act ................................................................................................ passim

WARN Act, 29 U.S.C.§ 2101 .........................................................................1, 2, 4, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4 .........................................................................................................6

Fed. R. Civ. P. 8 ........................................................................................................13

Fed. R. Civ. P. 12 ...............................................................................................3, 16, 17

S. Hrg. 109-1102, Hearing Before the Subcommittee on Aviation of the
    Commerce Committee, 109th Cong., 1st Sess. (July 19, 2005) .................................1

## INTRODUCTION

In 2007, Congress passed a law limiting the maximum age for pilots in commercial aviation to 65.  49 U.S.C. § 44729.  This law was based on more than 50 years of federal regulations imposing similar limits, drawing on decades of empirical research showing that older pilots are at higher risk of cognitive, medical, sensory, and motor function issues.  *See* S. Hrg. 109-1102, Hearing Before the Subcommittee on Aviation of the Commerce Committee, 109th Cong., 1st Sess. (July 19, 2005).  In late 2022, Congress expanded the law to allow for limits on pilot age in operations conducted under Parts 135 and 91k of Federal Aviation Administration regulations.  More specifically, the new legislation amends 49 U.S.C. § 44729 to permit covered air carriers to elect a maximum age restriction of 70 years for pilots, subject to a one-year delay in implementation.  *See* Pub. L. 117–328, div. Q, § 107(a), (b), Dec. 29, 2022, 136 Stat. 5257, 5258 ("Section 107"); *see also* First Amended Original Complaint ("FAC") ¶ 11.

Defendant NetJets Aviation, Inc. ("NetJets") is a covered carrier under Section 107, and has elected to adopt the age 70 provisions under that law.  NetJets' election under Section 107 took effect on January 10, 2024.  The Plaintiffs in this case – a group of eight NetJets pilots who are subject to the mandatory retirement rule – allege that such an election under Section 107 is unlawful.  They claim, in particular, that adoption of a pilot age restriction under Section 107 violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, unknown provisions of the Railway Labor Act ("RLA") as an unfair labor practice, and/or provisions of the collective bargaining agreement ("CBA") between NetJets and the pilots' union, known as NetJets Association of Shared Aircraft Pilots ("NJASAP" or "Union").  FAC ¶¶ 21–25, 31, 34–38.  They also appear to allege – albeit only in connection with what seem to be separate claims for declaratory and injunctive relief – that NetJets violates "public policy" and "possibly" the WARN Act in electing its policy, "since NetJets is currently the only operator under Part 135 and Parts 91

- 1 -

and 91K who meets this requirement and the legislation singles out all of its pilots who are, or will become age 70 when the policy becomes operational on January 10, 2024" and because "more than 83 pilots will be without jobs" when the age cap goes into effect.  *Id.* ¶¶ 30, 37.

As discussed in detail below, and as this Court already acknowledged in denying Plaintiffs' Motion for Preliminary Injunction after finding Plaintiffs failed to establish a likelihood of success on the merits of any of their claims (ECF No. 27), Plaintiffs' FAC is riddled with legal flaws.  The problems include the following:

(1)  Plaintiffs cannot establish general or specific personal jurisdiction over NetJets in the Northern District of Texas.  NetJets is not "at home" in Texas and none of the allegations in this case arise from NetJets' contacts with this forum.  *See infra* at 6–9.

(2)  The ADEA claim is barred by an express savings clause in Section 107, which immunizes actions taken under that Section from challenge in federal or state court under any "employment law."  49 U.S.C. § 44729(e)(2).  In addition, Plaintiffs have failed to exhaust their mandatory pre-suit administrative remedies.  *See infra* at 9–10.

(3)  Any claim alleging a breach of the CBA must be brought in arbitration under the RLA, 45 U.S.C. §§ 153, 184.  Moreover, to the extent Plaintiffs seek to relitigate the CBA claims already decided in arbitration, they lack standing to do so.  *See infra* at 11–13.

(4)  Plaintiffs fail to plead any plausible claim of an "unfair labor practice" under some undisclosed provision of the RLA.  *See infra* at 13–14.

(5)  Plaintiffs cannot plead stand-alone claims for declaratory and/or injunctive relief – those are remedies, not causes of action.  Nor can they base any such claim on the notion that NetJets violates "public policy" and "possibly" the WARN Act when exercising its rights under Section 107.  *See infra* at 14–15.

(6)     Venue is not proper in the Northern District of Texas.  This forum lacks any connection to these parties or claims.  *See infra* at 16–17.

For these reasons and for the reasons outlined in both NetJets' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 25, 26) and the Court's Order denying such Motion (ECF No. 27), this Court should dismiss Plaintiffs' FAC in its entirety with prejudice pursuant to Federal Rules 12(b)(1), 12(b)(2), 12(b)(3) and/or 12(b)(6).

## STATEMENT OF FACTS

For purposes of this motion only, NetJets assumes the facts as pled in the FAC are true.

## I.     The Parties and Collective Bargaining Agreement

NetJets offers management of jet aircraft to individuals and entities who own or lease shares of aircraft, FAC ¶ 7, which are flown by pilots who work for NetJets.  *Id.* ¶ 8.  NJASAP is the labor organization that represents the pilots employed by NetJets.  *Id.*  NetJets and the Union are parties to a CBA, which became effective in 2020.  *Id.* ¶ 9.  The CBA contains an anti-discrimination provision which provides that neither NetJets nor the Union shall discriminate against any employees covered by the CBA.  *Id.*  Plaintiffs are eight NetJets pilots who, as of January 10, 2024, were 70 years old.  *Id.* ¶¶ 1, 4, 17.

## II.    NetJets' Election of Mandatory Retirement Rule

Beginning in 2018, NetJets lobbied for legislation extending pilot age limits to large fractional operators.  *Id.* ¶ 10.  In December 2022, Congress passed legislation authorizing NetJets – and any other operators under Parts 135 and 91k with a sufficient number of turbojet flights per year – to implement a mandatory retirement rule under which pilots may no longer fly upon reaching age 70.  *Id.* ¶¶ 11–12; *see also* 49 U.S.C. § 44729.  The legislation is permissive, allowing carriers to voluntarily elect to implement a rule, but once that election is made, it is irrevocable.  FAC ¶ 12.  The CBA contains no language about mandatory retirement.  *Id.* ¶ 14.

### III.    NJASAP's Grievance

Following NetJets' election to implement the legislative age cap on January 10, 2023, the Union filed a grievance, claiming NetJets' election violated the CBA.  *Id.* ¶¶ 15–16.  Plaintiffs admit the grievance was recently denied.  ECF No. 22 ¶ 15.

### IV.    Plaintiffs' Allegations

A group of seven NetJets pilots filed their Original Complaint ("Complaint" or "Compl.") in this lawsuit on October 18, 2023. (ECF No. 1).  On December 19, 2023, after NetJets moved to dismiss the Complaint (ECF Nos. 14, 15), the original seven pilots and one additional pilot filed the FAC (ECF No. 18).  The FAC asserts three substantive causes of action: (1) a violation of the ADEA (FAC ¶¶ 21–25); (2) a violation of the NetJets-NJASAP CBA (*id.* ¶ 23); and (3) a violation of unknown provisions of the RLA (*id.* ¶¶ 31, 34–38).

Plaintiffs claim NetJets violated the ADEA by discriminating against pilots based on their age and because the age 70 classification does not constitute a "bona fide occupational qualification."  *Id.* ¶¶ 21–22.  They argue NetJets elected the retirement rule in violation of the applicable CBA rules barring discrimination.  *Id.* ¶¶ 16, 37.  Plaintiffs also assert that NetJets committed an "unfair labor practice" under the RLA because NetJets did not negotiate its election with either the Union or affected pilots.  *Id.* ¶¶ 35, 37–38.

The FAC also appears to assert separate but mostly duplicative counts for declaratory and injunctive relief.  Plaintiffs again allege NetJets' retirement rule violates the ADEA.  *Id.* ¶¶ 21–22, 29–30.  They also allege that NetJets' new mandatory retirement policy is invalid because it violates "public policy" and "possibly" the WARN Act, "since NetJets is currently the only operator under Part 135 and Parts 91 and 91K who meets this requirement and the legislation singles out all of its pilots who are, or will become age 70 when the policy becomes operational

on January 10, 2024" and because "more than 83 pilots will be without jobs" when the age cap goes into effect (*id.* ¶¶ 30, 37). In these counts, Plaintiffs also repeat their assertion that NetJets engaged in "unfair labor practices" in violation of the CBA and unspecified provisions of the RLA. *Id.* ¶¶ 30–31, 38.

## V.    Plaintiffs' Motion for Preliminary Injunction

On December 30, 2023, Plaintiffs moved for a preliminary injunction (ECF Nos. 22, 23) barring NetJets' implementation of its retirement policy on January 10, 2024. NetJets filed its opposition brief and supporting appendix on January 5, 2024. ECF Nos. 25, 26. This Court denied Plaintiffs' Motion for Preliminary Injunction, finding Plaintiffs' claims for (1) employment discrimination under the ADEA, (2) unfair labor practice, and (3) breach of the parties' CBA were unlikely to succeed on the merits. ECF No. 27 at 6.

The Court found Plaintiffs "do not allege that they filed an EEOC charge, and their motion indicates that they did not so do" (*id.* at 4); NetJets "is not subject to the NLRA" (*id.*); and "this Court does not have jurisdiction over the Pilots' claim for breach of the CBA under the RLA" (*id.* at 5). Thus, the Court found "each of the Pilots' claims are unlikely to succeed on the merits" and denied Plaintiffs' request for injunctive relief for "fail[ure] to establish a required element for a preliminary injunction." *Id.* at 6.

Further, the Court found Plaintiffs' case did not "present[] an exceptional circumstance warranting an injunction" because no injunction was needed "to preserve the jurisdiction of the grievance procedure"; Plaintiffs' alleged injury was not irreparable; and "there is no indication that the Policy's implementation will disrupt the status quo enough to support the very rare preliminary injunction in this context [*i.e.*, a case involving a minor dispute under the RLA]." *Id.* at 5–6.

**ARGUMENT**

**I.     The Court Should Dismiss for Lack of Personal Jurisdiction.**

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *see also, e.g.*, *Martinez v. Tyson Foods, Inc.*, 2021 WL 1289898, at *2 (N.D. Tex. Apr. 7, 2021).[1]

There are two types of personal jurisdiction: general and specific.  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 261-63 (2017).  General jurisdiction over a corporation exists where the company is incorporated and where it maintains its principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Specific jurisdiction exists over suits that arise out of the defendant's contact with the forum.  *Id.* at 127.  The Fifth Circuit articulated a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020).

---

[1] "When a federal question case is based upon a federal statute that is silent as to service of process," as is the case here, Fed. R. Civ. P. 4(e) "permits a federal court to exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which that court sits." *Aviles v. Kunkle*, 978 F.2d 201, 203–04 (5th Cir. 1992).  In other words, a district court may exercise personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum state. *Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).  "Unlike some federal statutes, the ADEA does not provide for nationwide service of process or other process supplanting Texas law prescribing service of process," and thus, in this case, the Texas long-arm statute determines the scope of jurisdiction.  *Kinney v. Int'l Bus. Machs. Corp.*, 2021 WL 11670020, at *5 n.1 (W.D. Tex. June 7, 2021), *amended on reconsideration*, 2021 WL 11670024 (W.D. Tex. July 7, 2021).

### A.      There Is No General Jurisdiction.

Here, as Plaintiffs admit, NetJets is a Delaware corporation with its principal place of business in Columbus, Ohio.  *See* FAC ¶ 5.  Plaintiffs do not allege that NetJets' Texas operations "are so 'continuous and systematic' as to render [NetJets] essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).  Indeed, Plaintiffs' allegations that NetJets is registered to do business in Texas, may be served with process in Texas, and "maintains a facility" in Texas, FAC ¶ 5, are insufficient to establish general jurisdiction.  *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("Not only does the mere act of registering an agent not create Learjet's general business presence in Texas, it also does not act as consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter."); *Fiduciary Network, LLC v. Buehler*, 2015 WL 2165953, at *6 (N.D. Tex. May 8, 2015) (registration to do business in Texas is insufficient).[2]  Nor do Plaintiffs' claims that "NetJets offers a Global 7500 training program, flight safety courses, and pilot recruiting events," has sales representatives and corporate contracts in Texas, and advertises in Texas, suffice to establish general jurisdiction.  *E.g.*, *Poly-Am., L.P. v. API Indus., Inc.*, 2021 WL 8441917, at *4 (E.D. Tex. Sept. 30, 2021) (finding non-resident defendant's "operation of its Texas facility, its employment of seventy workers in Texas, and its distribution of its trash bags in Texas" insufficient to establish

---

[2] *See also, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that it is "incredibly difficult" to establish that a corporation is "at home" in some jurisdiction other than where it is headquartered); *Hardin v. United Airlines, Inc.*, 2021 WL 3771768, at *2 (S.D. Tex. July 15, 2021) (airline is not "subject to general jurisdiction in Texas" despite having substantial facilities in state); *Agher v. Envoy Air Inc.*, 2018 WL 6444888, at *2 (C.D. Cal. Oct. 12, 2018) (airline not subject to general personal jurisdiction in California where it employed 8,500 people and had 16% of its flights); *Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*, 2019 WL 3713724, at *2 (S.D. Tex. Jan. 25, 2019) (Marriott not subject to general personal jurisdiction despite being alleged to "operate[], franchise[], and/or license[] more properties in Texas than any other state" and having, through affiliates, "487 properties in Texas").

general jurisdiction); *Rawls v. Old Republic Gen. Ins. Grp., Inc.*, 489 F. Supp. 3d 646, 659–61 (S.D. Tex. 2020) (finding manufacturer not "'essentially' at home" in Texas, though it had dealer locations and factory service centers there, engaged in Texas-facing advertising, was registered to do business, and maintained a registered agent for service of process in Texas); *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts., LLC*, 466 F. Supp. 3d 692, 701 (S.D. Tex. 2020) ("[T]he Court is not convinced . . . that four offices, a division focused on wealth management in Texas, 240 employees, and a business presence in Texas (i.e., generating at least a few hundred transactions each year) are substantial enough to render [the defendant] at home here."); *see also Aries Int'l, LLC v. Isramco Negev 2 Ltd. P'ship*, 2014 WL 4924002, at *4–5, 7 (S.D. Tex. Sept. 30, 2014) (finding no general or specific personal jurisdiction over defendant where plaintiff claimed defendant (1) "entered into contracts with Texas residents and many of those contracts are performable, at least in whole or in part, in Texas"; (2) "committed torts, in whole or in part, in the state of Texas"; and (3) "recruited residents for employment inside or outside of" Texas); *Casas v. Northrop Grumman Ship Sys., Inc.*, 533 F. Supp. 2d 707, 713 (S.D. Tex. 2008) ("corporate defendant's nationwide advertising efforts that reach the forum state" insufficient to confer general jurisdiction).

**B.     There Is No Specific Jurisdiction.**

In analyzing whether a "controversy is related to or 'arises out of' a defendant's contacts with the forum" for purposes of specific jurisdiction, a court should focus on the "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

In this case, Plaintiffs fail to allege how their "cause of action arises out of or results from [NetJets'] forum-related contacts." *Libersat*, 978 F.3d at 319.  Nowhere in the FAC do Plaintiffs assert that this suit arises from NetJets' activities in Texas, or that any connection exists between

Plaintiffs' claims and NetJets' Texas activities or its "purposeful availment" of the privileges and benefits of doing business in Texas. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222–30 (5th Cir. 2012) (no specific jurisdiction where claims do not arise from defendant's in-state activities). Specifically, Plaintiffs do not allege that any of them live in Texas (to the contrary, they allege that they reside in "various states"). FAC ¶ 4. Nor do they allege that any of NetJets' alleged actions occurred in Texas or have any specific repercussions here.[3]

## II.    Plaintiffs Fail to State a Claim Under the ADEA.

Plaintiffs plead their primary claim under the ADEA, which prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The ADEA also provides, *inter alia*, that it shall not be unlawful for an employer to take any action otherwise prohibited by the ADEA "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." *Id.* § 623(f).

For two independent reasons, Plaintiffs' ADEA claim fails as a matter of law. First, the claim is expressly barred by Section 107. In particular, subsection (e)(2), titled "Protection for Compliance," provides as follows:

> An action taken in conformance with this section, taken in conformance with a
> regulation issued to carry out this section, or taken prior to the date of enactment of

---

[3] Because Plaintiffs have failed to allege how this case arises from NetJets' activities in Texas, there is no need to reach the other prongs of the *Libersat* test, including whether assertion of jurisdiction would be "fair and reasonable." *Thornton v. AAA Colo., Inc.*, 2023 WL 5058839, at *8 (N.D. Tex. Aug. 8, 2023). If it did reach this question, however, the Court should conclude that it is not fair or appropriate to litigate here. Among other considerations, Ohio – where NetJets is based – has a much more obvious interest in these issues than Texas. *See A.M. v. Salesforce.com, Inc.*, 2022 WL 2181068, at *8 (N.D. Tex. June 16, 2022) (other "convenient and effective forum[s]" existed in which plaintiff could seek relief); *cf. also Companion Prop. & Cas. Ins. Co. v. Palermo*, 2012 WL 12882078, at *7 (N.D. Tex. Nov. 19, 2012), *aff'd*, 723 F.3d 557 (5th Cir. 2013) ("[T]he judicial system has an interest in preventing plaintiffs from forum shopping by alleging attenuated connections to jurisdictions unrelated to their claims.").

this section in conformance with section 121.383(c) of title 14, Code of Federal Regulations (as in effect before such date of enactment), may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality.

49 U.S.C. § 44729(e)(2). The ADEA is, of course, an "employment law" for purposes of this subsection. *Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 978 (11th Cir. 2011) (dismissing ADEA claim under earlier, substantively identical version of 49 U.S.C. § 44729(e)(2)).

Second, "filing [an administrative] charge with the [Equal Employment Opportunity Commission ('EEOC') or a comparable state agency] is a condition precedent to the filing of . . . [an] ADEA suit." *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir. 2005); *see also* 29 U.S.C. § 626(d)(1). When a plaintiff cannot plausibly allege that he or she has exhausted these pre-suit administrative remedies, the claim must be dismissed. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 305 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019) (applying Title VII). Here, the Plaintiffs do not plead that they filed charges with the EEOC or a comparable state agency. And in their recent opposition to NetJets' initial motion to dismiss, Plaintiffs admit they have not filed administrative charges, and essentially suggest they should be excused from doing so. ECF No. 20 at 10. Based on the foregoing, the Court recently found Plaintiffs' ADEA claim unlikely to succeed on the merits "because it was not properly exhausted." ECF No. 27 at 4. Thus, Plaintiffs have failed to state a claim upon which relief can be granted. *Koshar v. TIGI Linea Corp.*, 2022 WL 848052, at *3 (E.D. Tex. Feb. 4, 2022), *report and recommendation adopted*, 2022 WL 839945 (E.D. Tex. Mar. 21, 2022) (dismissing ADEA claim for failure to allege exhaustion of pre-suit requirements); *Brown v. WalMart #6467*, 2020 WL 6787150, at *2 (E.D. Tex. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6781520 (E.D. Tex. Nov. 17, 2020) (same).

### III.     Plaintiffs Fail to State a Claim for Breach of the NetJets-NJASAP Collective Bargaining Agreement.

Plaintiffs' FAC also appears to assert a distinct claim for breach of the CBA.  FAC ¶¶ 1, 9; *see also id.* ¶ 30 (alleging that "adoption and enforcement of [the retirement] policy violates the CBA").  The only specific provision in the CBA that Plaintiffs mention is Section 12.1, which allegedly "provides that neither the Union or NetJets shall discriminate against any crewmembers covered by the agreement, including age, and to provide [*sic*] an equal opportunity to all persons." *Id.* ¶ 9.  There are two fatal problems with this claim.

*First*, the RLA provides that disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" are subject to mandatory arbitration.  45 U.S.C. §§ 153(i), 184; *see also Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 594 (5th Cir. 1993).  The jurisdiction of arbitral boards over such disputes is exclusive.  *Consolidated Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 303–04 (1989); *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 38 (1963) (the adjustment board procedure "is a mandatory, exclusive, and comprehensive system for resolving grievance disputes," and "the other party may not defeat this [process] by resorting to some other forum").

As the Supreme Court has recognized, this statutory framework precludes federal courts from exercising subject matter jurisdiction over claims requiring interpretation or application of a labor contract.  *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320 (1972) (claim that discharge violated parties' CBA may not be brought in court but must be referred to arbitration).  In particular, claims asserting a breach of the CBA itself are clearly subject to the exclusive procedures of the RLA, and hence may not be brought in federal court.  *Brown v. Am. Airlines*, 593 F.2d 652, 655–56 (5th Cir. 1979); *Slocum v. Del., Lackawanna & W. R.R. Co.*, 339 U.S. 239, 244–45 (1950).

In some cases where RLA preemption or preclusion is asserted as a defense, there is no real need for interpretation of the CBA, and thus a claim brought under state or federal law can be litigated in court.  *See, e.g.*, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263–66 (1994).  That exception is, of course, not applicable here, where the claim is not nominally brought under some separate law but asserts a breach of the CBA itself.  *See, e.g.*, *Grimes v. CSX Transp., Inc.*, 338 F. App'x 522, 524 (7th Cir. 2009) (claim for breach of CBA must be referred to arbitration); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1052–53 (11th Cir. 1996) (same).  As the Court recognized already in denying Plaintiffs' request for injunctive relief, because any claim that NetJets is in violation of Section 12.1 of the CBA would necessarily require interpretation and application of that provision, the issue can only be decided in arbitration.  ECF No. 27 at 5 (finding the "alleged dispute concerning whether Section 12.1 of the CBA protects the Pilots from the Policy is legally minor because the question concerns the proper application of the CBA to this situation").

*Second*, to the extent that Plaintiffs are alleging a violation of Section 12.1 in particular, that claim has already been decided in arbitration.  Plaintiffs allege that their union representative, NJASAP, has a "currently pending" grievance on this issue, FAC ¶ 16, and in their Motion for Preliminary Injunction, they acknowledge this grievance "was recently denied by the Arbitrator." ECF No. 22 ¶ 15; *see also* ECF No. 27 at 5 (recognizing "the parties have already engaged in a binding arbitration over this dispute" and that the "arbitration board . . . determined it was unable to identify any violation of the CBA").  Under the RLA, that arbitral determination that Section 12.1 does not bar NetJets' action is final and binding, and Plaintiffs lack standing to challenge it. In *Mitchell v. Continental Airlines*, the Fifth Circuit explained the rule:

> When a collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees, the results obtained by the union are normally conclusive of the employees' rights under the agreement. This means, of course,

> that an aggrieved worker whose employment is governed by such an agreement
> normally lacks standing independently . . . to attack in court the results of the
> grievance process. . . .

481 F.3d 225, 232 (5th Cir. 2007) (extending rule from other labor laws to the RLA). In this

situation, the employees' only remedy is to file a claim against their union for breach of the duty

of fair representation. *Id.* They cannot proceed with their current claim.

## IV. Plaintiffs' "Unfair Labor Practice" Claim Lacks Legal Merit.

Next, Plaintiffs allege NetJets' adoption of an age limit under Section 107 "is an unfair

labor practice in violation of the RLA and the CBA." FAC ¶ 37. They do not identify any

particular provision of the RLA that NetJets has supposedly violated. For at least two reasons, any

"unfair labor practice" claim under the RLA is frivolous.

*First*, Plaintiffs fail to meet the minimal standards of Federal Rule 8, which requires "a

short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). The purpose of this Rule is to "to give the defendant fair notice of what

the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). Here, Plaintiffs have failed to identify which provisions of the RLA are at issue, so NetJets

is left to guess. That is not sufficient. *E.g.*, *Akula v. Phillips*, 2022 WL 17903707, at *7 (E.D. La.

Dec. 23, 2022) (failure to adequately specify basis for claim is "quintessential example of an

allegation that cannot survive a 12(b)(6) motion to dismiss").

*Second*, the term "unfair labor practice" refers to Section 8 of the Labor-Management

Relations Act ("LMRA"), 29 U.S.C. § 158. The LMRA does not apply to entities like NetJets that

are subject to the RLA. *See id.* § 152(2); ECF No. 27 at 4–5 (same). The RLA contains no direct

analogue to Section 8; the only similar provisions are Section 2 Third and Fourth, which generally

prohibit "interference" with the right to organize and bargain collectively. 45 U.S.C. §§ 152 Third,

Fourth. But they apply only in very narrow circumstances, including (1) where the usual dispute

resolution procedures of the RLA are unavailable, or (2) a carrier takes action "for the purpose of weakening or destroying the union." *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co*., 894 F.2d 1463, 1468 n.10 (5th Cir. 1990).  Nothing in the FAC comes close to alleging such a violation.  Instead, Plaintiffs admit the parties have followed the RLA's usual grievance procedures, and that the Union is alive and well.  FAC ¶¶ 8, 16.

## V.    The Court Should Dismiss Plaintiffs' Claims for Declaratory and Injunctive Relief.

Plaintiffs also plead, as separate counts, an entitlement to declaratory and injunctive relief. FAC ¶¶ 26–32, 40–46.  Those claims are also defective for multiple reasons.

*First*, the Declaratory Judgments Act, 28 U.S.C. § 2201, does not create a separate substantive cause of action.  *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc*., 723 F.2d 1173, 1179 (5th Cir. 1984).  It is merely a procedural vehicle, and so there must be some viable underlying cause of action to litigate.  *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990).  The same is true of a request for injunctive relief – such a request is not properly stated as a separate cause of action because it is necessarily derivative of some substantive claim.  *See, e.g.*, *Wildy v. Wells Fargo Bank, N.A.*, 2013 WL 246860, at *6–7 (N.D. Tex. Jan 21, 2013).

*Second*, most of Plaintiffs' scattershot "declaratory relief" and "injunction" claims merely replicate or incorporate bits and pieces of their other claims under the ADEA, CBA and/or the RLA, and so are deficient for the same reasons outlined above.  And if those other claims fail as a matter of law, then Plaintiffs' derivative declaratory and injunctive relief claims must fail as well. *See Verde Minerals, LLC v. Koerner*, 2019 WL 1429789, at *3 (S.D. Tex. March 29, 2019) ("Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive.") (quoting *Mann v. Bank of New York Mellon*, 2013 WL 5231482, at *8 (S.D. Tex. Sept. 16, 2013)).

*Third*, Plaintiffs cannot rely on an allegation that NetJets' retirement policy "possibly" violates the WARN Act (FAC ¶¶ 30, 37). A mere "possibility" that a defendant has acted unlawfully is inadequate to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.") (quoting *Twombly*, 550 U.S. at 557).

*Fourth*, Plaintiffs fail to plead a "mass layoff" under WARN. *See* 29 U.S.C. § 2101(a)(3). The WARN Act applies to a "reduction in force" that "results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees." *Id.* 2101(a)(3)(B)(i)(I). Plaintiffs' allegation that "more than 83 pilots" will be subject to termination on January 10, 2024 (FAC ¶ 30), is insufficient because there is no allegation that there will be a reduction of at least 33 percent at any single site of employment.[4]

*Fifth*, Plaintiffs do not even attempt to explain how NetJets violates "public policy." FAC ¶ 30. Such an allegation is far too conclusory. *See Davis v. Am. Mortg. Network, Inc.*, 2012 WL 13018977, at *2 (N.D. Tex. Jan. 18, 2012), *report and recommendation adopted*, 2012 WL 537594 (N.D. Tex. Feb. 16, 2012) (dismissing complaint which "consist[ed] only of labels and conclusions that are too vague to state a claim for relief that is plausible on its face and [was] insufficient to put Defendant on notice of the alleged wrongdoing").

---

[4] While the Court need not take it into account for purposes of this Opposition, there will in fact be no reduction in force because NetJets is hiring more pilots than will retire under the age 70 limit. *See* ECF No. 26, Exhibit 1 to Declaration of Bradley Ferrell, Appendix in Support of Defendant NetJets Aviation, Inc.'s Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("App.") at 22, 50–51 ("dismiss[ing] any suggestion the Age 70 restriction consisted of a 'reduction in force' . . . [because] there was no overall reduction in the overall number of pilots" after the System Board recognized Company testimony that NetJets "is in growth mode and over the past two years [has] increased [its] pilot workforce").

## VI.    The Court Should Dismiss This Action Because This Is the Improper Venue to Adjudicate the Action.

When an action is based on federal question jurisdiction—as is the case here—28 U.S.C.

§ 1391(b) controls the determination of venue.  It provides that a civil action under federal question

jurisdiction may be brought only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such actions.

28 U.S.C. § 1391(b).

While district courts often dismiss cases for improper venue without prejudice to filing of

the suit in an appropriate district, a court may dismiss a complaint with prejudice where "re-filing

in a court with proper venue would be futile" because the claims would almost certainly be barred

on other grounds.  *See McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 366 (5th Cir.

2008); *Morris v. Hedricks*, 2022 WL 4551588, at *5 (E.D. La. Sept. 29, 2022) (dismissing

plaintiffs' claims with prejudice under Rule 12(b)(3) where transfer would be futile); *Townsend v.

Pep Boys, Manny Moe & Jack*, 2014 WL 4826681, at *2 (N.D.N.Y. Sept. 29, 2014) (finding

magistrate judge "correctly recommended that the Court dismiss the complaint with prejudice

because 'of the improbability of damages asserted, and the incognizable theories of recovery, as

well as the improper venue,'" because "amendment would be futile"); *cf. Crase v. Astroworld,

Inc.*, 941 F.2d 265, 267 (5th Cir. 1991) (holding district court did not abuse discretion in

dismissing—rather than transferring—plaintiff's lawsuit for improper venue because claims were

time-barred).

- 16 -

Here, the Northern District of Texas constitutes an improper venue under 28 U.S.C. § 1391 because Plaintiffs fail to plead that this venue is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  This failure—along with Plaintiffs' failure to (1) establish this Court has personal jurisdiction over NetJets, or (2) state any legally plausible claims—warrants dismissal of Plaintiff's entire complaint under Fed. R. Civ. P. 12(b)(3) with prejudice.  *McClintock*, 299 F. App'x at 366; *Morris*, 2022 WL 4551588, at *5; *Townsend*, 2014 WL 4826681, at *2.

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Original Complaint should be dismissed in full and with prejudice.

Dated: January 11, 2024

Respectfully submitted,

*/s/ Donald J. Munro*

Donald J. Munro
D.C. Bar No. 453600
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3922
Email: dmunro@jonesday.com

Enrique A. Lemus
TX Bar No. 24092684
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Telephone: (214) 969-4877
Email: elemus@jonesday.com

*Counsel for Defendant*
*NetJets Aviation, Inc.*

- 17 -

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Donald J. Munro*
Donald J. Munro