UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY LANGLEY, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-cv-2300-x |
| | § | |
| NETJETS AVIATION INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Having considered the underlying facts, the parties' arguments, and the applicable caselaw, the Court finds that transfer is appropriate. The Court **GRANTS LEAVE** to the parties to file objections, if any, on or before fourteen days from the date of this order. If no objections are filed within fourteen days of the date of this order, the Court will transfer the case to the United States District Court for the Southern District of Ohio, Eastern Division. If the parties determine before the fourteen-day window that they will not file objections, the Court **ORDERS** the parties to file a joint status report noting that they waive any objections to transfer.

### I. Factual Background

Defendant NetJets Aviation Inc. is a private business jet charter and aircraft management company. The plaintiffs were pilots employed by NetJets to fly its private charter jets. In December 2022, a federal omnibus spending bill passed, which allowed large fractional operators and charter providers to set a voluntary 70-year-old age limit for pilots. NetJets adopted a mandatory retirement age of 70 for

its pilots, effective January 10, 2024. The plaintiffs filed this lawsuit and a motion for a preliminary injunction seeking an order to halt implementation of that policy, which this Court denied. Now, NetJets seeks to dismiss this action for, among other things, want of proper venue.

## II. Legal Standard

Title 28, section 1404 of the United States Code authorizes a district court to *sua sponte* "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice."[1] This statute codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system."[2] "In cases where there is no forum-selection clause, district courts 'must evaluate both the convenience of the parties and various public-interest considerations.'"[3] District courts analyze section 1404(a) transfers with private- and public-interest factors:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home

---

[1] 28 U.S.C. § 1404(a); *see also Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) ("Such transfers may be made *sua sponte*.").

[2] *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. D. of Tex.*, 571 U.S. 49, 60 (2013).

[3] *DSA Promotions, LLC v. Vonage Am., Inc.*, 2018 WL 1071278, at *2 (N.D. Tex. Feb. 27, 2018) (Fitzwater, J.) (quoting *Atl. Marine*, 571 U.S. at 62).

with the law.  The Court must also give some weight to the plaintiffs' choice of forum.[4]

"Decisions to effect 1404 transfers are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."[5]

### III. Legal Analysis

### A. Private Factors

As for the relative ease of access to sources of proof, in an age discrimination case, the sources of proof won't be in Texas—they'll likely be in Ohio, where NetJets' principal place of business is.[6]  Witnesses are similar.  The plaintiffs provide no indication that any witnesses are in Texas whatsoever.  Therefore, compelling out-of-state witnesses would certainly be both burdensome and costly.  Further, no property is in dispute in this action, so that factor is irrelevant.

As for the other private factors, the plaintiffs confirm that the principal place of business is NetJets' office in Ohio.[7]  The plaintiffs never dispute that none of them are Texans.  Also, this litigation is about a change in NetJets' corporate policy and whether it is discriminatory.  Absent some meaningful Texas connection, a challenge to the corporate policy of a non-Texas company by non-Texans should be brought in not-Texas.  For their part, the plaintiffs point to the fact that NetJets has a training program, safety courses, and recruiting events in Texas, contracts with Texas companies, advertises in Texas, maintains a facility at Love Field, flies out of Dallas–

---

[4] *Atl. Marine*, 571 U.S. at 62, n. 6 (cleaned up).

[5] *Jarvis Christian Coll. V. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir 1988).

[6] Doc. 49 at 2.

[7] Doc. 49 at 2.

Fort Worth Airport, and has Texan customers (referred to as "Owners" because they own fractions of the planes).[8]  But none of these represent the sort of connection to the Northern District that indicates witnesses or sources of proof for this dispute are in the Northern District.[9]

Additionally, the Court takes a realistic approach to transfer here.  After a preliminary review of the pleadings and arguments, it appears this Court likely lacks personal jurisdiction over NetJets.  But to determine this conclusively—because of the plaintiffs' woefully inadequate briefing—the Court would need to order jurisdictional discovery, hold a hearing, and decide that preliminary question before jumping into the merits of the parties' (largely legal) arguments.  That's a lot of time and money to expend in a case that is already over a year old to answer the question of whether or not personal jurisdiction exists.  Rather than burden the parties with this potentially inconsequential rigamarole, it's better for the judiciary and the parties to get this case back on track and moving forward.

Finally, there's a question of justice to the parties.  The plaintiffs have already filed three complaints,[10] and the parties have fully briefed two sets of motions to

---

[8] Doc. 37 at 8–9.

[9] This also bears on the Court's reasoning in the "public factors" section because the Court is supposed to look to the locale of the "the *events*—not the *parties*." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024).  None of those allegations concern where the events leading to this lawsuit took place.  Indeed, all they reflect is that NetJets has some connections to Texas—not that this lawsuit has connections to Texas.

[10] Docs. 1, 18, 49.

4

dismiss.[11]  Subjecting them to more wheel-spinning here is not justice—it's delay. Accordingly, the private interest factors weigh in favor of transfer.

## B. Public Factors

While the Court does not think court congestion will be a problem, there is a significant interest in having local cases decided at home.  "Considerations such as the location of the injury, witnesses, and the plaintiff's residence, are useful proxies for determining what local interests exist in each venue."[12]

The plaintiffs never make clear where any of their injuries occurred.  That is, they never say that they were injured in Texas, employed out of the Texas office, terminated in Texas, or that they live in Texas such that the effects of their purportedly wrongful terminations were felt in Texas.  They plead no meaningful connection between their purported injury and Texas.  The plaintiffs never explain where witnesses are likely to be and, tellingly, never draw a connection between NetJets' Texas operations and discriminatory firing.  NetJets is a Delaware corporation with its principal place of business in Ohio.[13]  A dispute between a foreign corporation and its employees, when apparently none of the employees who are suing the corporation experienced any harm in the forum, should be litigated elsewhere.

The Court accords some weight to the plaintiffs' choice in forum.  "The weight to be accorded the plaintiff's choice of forum is diminished, however, where she brings

---

[11] *See* Docs. 29, 37, 44; *see also* Docs. 51, 54, 55.

[12] *In re Clarke*, 94 F.4th at 511 (cleaned up).

[13] Doc. 49 at 2.

5

suit outside her home forum."[14]  Here, the plaintiffs never dispute that they are not Texans—much less Northern District of Texas Texans.  The plaintiffs have given no reason as to why this litigation belongs in or is convenient for anyone to take place in Texas, and the Court cannot find one either.

Since this case likely does not belong in the Northern District of Texas, the Court must ascertain where it *does* belong.  The transfer statute narrows down the possibilities: "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[15]  Ohio is the obvious answer—always has been.  Ohio is NetJets' principal place of business, as the plaintiffs admit.[16]  A United States district court in Ohio is more equipped to deal with the parties in the instant case, it will be closer to likely witnesses and the source of the purported harm, and it will not have to worry about personal jurisdiction, allowing it to jump straight into the merits of the motion to dismiss without having to engage in a time-consuming, costly, and burdensome practice for both the court and the parties.

## IV. Conclusion

For the reasons detailed above, the Court **GRANTS LEAVE** to the parties to object to the Court's finding that a transfer is warranted within fourteen days of the date of this order.  If no objections are filed within fourteen days of the date of this order, the Court will transfer the case to the United States District Court for the

---

[14] *Sivertson v. Clinton*, 2011 WL 4100958 at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.).

[15] 28 U.S.C. § 1404(a).

[16] Doc. 49 at 2.

Southern District of Ohio, Eastern Division. If the parties determine before the fourteen-day window that they will not file objections, the Court **ORDERS** the parties to file a joint status report noting that they waive any objections to transfer.

      **IT IS SO ORDERED** this 18th day of February, 2025.

                                             _____

                                           BRANTLEY STARR
                                           UNITED STATES DISTRICT JUDGE